CHIEF JUSTICE LINDSAY
delivered the opinion op the court.
The appellant Addison Turner, who testified in his own behalf, states that the land in controversy was in the occupation and possession, during the year 1853, of one Rutherford Chitsey and William and Sarah Thomas, and that from and after March, 1853, these parties held as his tenants under written contracts of lease. These alleged tenants entered originally as purchasers under executory contracts from one Joseph Throckmorton, and were holding under him and looking to him for title, or else recognizing him as their landlord, at the time they leased from and attorned to Turner. They soon repudiated Turner’s title and returned to their allegiance to that of Throckmorton, and in 1854 Turner instituted his *523 actions against them and others, alleging that they were holding the lands adversely and without right, and seeking to recover the possession.
In the meantime, Joseph Throckmorton died, leaving an infant son who was his sole heir-at-law. His widow afterward intermarried with Walter Case, and by an amended petition filed in 1857, Case and wife and the infant, Hugh R. Throckmorton, were made defendants to the several actions of ejectment pending against Chitsey, Thomas, and others. The parties all defended, denying Turner’s title, and claiming under Joseph Throckmorton, deceased. About 1865 these actions were all dismissed upon rule, but without prejudice to the right of Turner to sue again.
Accordingly in 1870, this action was instituted against the tenants of Case, who was controlling the lands in the right of his wife, and as statutory guardian for the infant Hugh R. Throckmorton. They were made parties upon their own petition, and defended on the several grounds, of want of title in Turner, and of title in themselves under regular conveyances ' from the patentees of the land, and by actual adverse possession under a claim of right for more than fifteen years before the institution of this proceeding.
The cause was transferred to equity and consolidated, with an appeal taken from an inquisition of forcible entry and detainer, taken out by Case against a party claiming to be the tenant of the appellant.
The person who originally owned the land was one Thornton Taylor, a citizen of Virginia. He was imprisoned in that state for debt at some time anterior to the year 1840. In order to be allowed to take the insolvent’s oath, and to procure his release from imprisonment, he surrendered his evidences of title to the sheriff, who assumed to sell and convey the lands to this appellant. The papers executed by Taylor and the sheriff were not such as to pass the legal title to Turner, *524 even if they invested him with an equity which the courts of this state could recognize.
Realizing this fact, Turner, in July, 1853, procured the two sons and heirs-at-law of Taylor, who was then dead, to convey to him by deeds regularly and properly executed, acknowledged, and recorded.
Appellees claim that these deeds were champertous and void, because, they say, that Jos. Throckmorton, by his tenants and by vendees, under executory contracts, who were still looking to him for title, was in the actual adverse possession of the lands at the time of their execution. Turner claims that he was then holding the land by his tenants, Chitsey and Vm. and Jane Thomas.
An attornment by a tenant to a stranger without the consent of the landlord under whom he entered, and not pursuant to or in consequence of the judgment, order, or decree of a court, is void, and the holding of a tenant so attorning will be treated as the possession of the person under whom he entered. (Sec. 16, chap. 80, Rev. Stat.; 2 Stan. 229; 3 Bush, 72; 17 B. Mon. 18.)
As said in this court in the case of Blue v. Sayre (2 Dana, 213), such an attornment is utterly void and ineffectual. “ The legal character and effect of the relation of landlord and tenant can not be changed by an illegal attornment, or by mere disclaimer, which can not be deemed as amounting to an actual disseisin unless the landlord elect to consider it as a disseisin.”
And this doctrine applies as well in the case of a quasi tenancy resulting from a purchase by executory contract. In such a case the purchaser or quasi tenant holds the possession (so far as strangers are concerned) for the benefit of his vendor’s title, which he is estopped to deny, and which he can not prejudice by any contract he may make with any other person. (Kirk v. Taylor’s heirs, 8 B. Mon. 262.)
*525 It results therefore that in July, 1853, Jos. Throckmorton was in actual adverse possession of the land, claiming to be the true and lawful owner of the title, notwithstanding the wrongful attornments of Chitsey and Thomas, and that the deeds in question are champertous and void.
These conveyances out of the way, the only ground upon which Turner can rely for a recovery is the implied recognition of his title by Jos. Throckmorton, resulting from his assisting in making a survey of the land about the year 1840. At that time Throckmorton was quite a young man, and may not have been, and probably was not, apprised of the facts testified to in this action by a number of witnesses, tending to prove that his father had long asserted some kind of claim to at least a portion of the land in contest. But in ány event the appellant shows that in 1854 Throckmorton’s tenants and vendees were in possession. The weight of the evidence shows that this possession commenced, at least as early as the year 1848, and - it has been practically and substantially continuous since that time.
The temporary absence of a tenant from a portion of the tract, the remainder being all the while actually held, and the time taken up in ousting an intruder, in or about 1862, did not amount to a break in the possession.- The party to whom Case rented failed to comply with his lease by taking possession, immediately upon the vacation of the premises by the preceding tenant, and an unauthorized intruder took possession of the houses, and had to be ousted by legal proceedings, which were promptly resorted to by Case, and the next year the premises were occupied by Case’s tenant. And further than this, the possession of Case during all this time was impliedly recognized by Turner, whose-actions, instituted in 1854, were then pending.
On the original appeal the judgment is affirmed.
Craycroft, one of the original defendants, was in possession *526 as the tenant of Case and wife. After they and the infant, Hugh R. Throckmorton, had petitioned to be made parties to the action, the appellant bought out or compromised with their said tenant, and thus obtained his possession.
Case, as husband and guardian, proceeded to oust appellant, the intruding tenant^ by a writ of forcible entry and detainer. ' Appellant, by an amended petition, sought and procured an order of injunction restraining Case from proceeding to enforce said writ.
Case, by answer, asked the chancellor to restore to him the possession thus fraudulently obtained • pending the litigation, , but when appellant’s petition was dismissed, the chancellor remitted Case to his proceeding at law. This was error. Appellant entered pendente lite. He brought the question of his entry into the cause, and the whole case being before the chancellor, he should have placed the parties in statu quo.
On the cross-appeal the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.